DETERMINED IN THE

# Supreme Court of Judicature,

OF THE

# STATE OF NEW JERSEY,

AT MAY TERM, 1828.

---

SAMUEL C. TAYLOR and others, Executors of ABNER WOOD-
WARD, deceased, *against* HORACE N. WOODWARD.

## ATTACHMENT.

1. The court out of which an attachment issues, has the power to allow time to the auditors to make their report, beyond the third term from the issuing of the attachment.

2. Though the language of the rule, referring back the report of auditors is, "that the report of the auditors be referred back to them; and that they have time until the first day of next term to make their report." Yet the limitation of time contained in the rule is in no wise of the essence of the authority of the auditors, nor does its lapse disrobe them of their character as auditors, or extinguish the power of the court over them and their report.

3. The *dies datus* contained in the rule is, in legal contemplation, nothing more than a continuance and the acceptance of the report, after the time mentioned in the rule has expired; and the rendition of judgment upon it, will be a sufficient warrant to the clerk to enter such continuance as the regularity of the record may require.

4. Though the auditors make report at the third term, yet if the report is referred back to them, they may properly include in it the demand of a creditor not exhibited to them until after the report had been referred back.

Taylor *et al v.* Woodward.

WALL for plaintiffs.

*Wood* for defendant.

CHIEF JUSTICE delivered the opinion of the court.

In the term of February 1826, the sheriff made return to the writ of attachment in this case, that he had attached a legacy of $4,000, bequeathed to the defendant·by Abner Woodward, payable by Apollo Woodward, and charged on a farm devised to him. The auditors appointed to audit and adjust the demands of the plaintiffs and other applying creditors made, to the term of September 1826, being the third term, their report, whereby they reported the sums due to certain creditors, and found that there was nothing due from the defendant to the plaintiffs in attachment. At the same term the court for satisfactory reasons, the validity of which have not been since questioned, made a rule to the following effect: " that the report of the auditors be referred back to them; and that they have time until the first day of next term to make their report." At the term of November 1827, the auditors made their report, finding due to the plaintiffs in attachment $864.57; finding, also, the sums due to the other creditors named in the former report ; and finding $66.16 due to Aaron Cole, a creditor not named in the former report, but who presented his claim for audit, after the matter was sent back to them.

John De Camp, to whom the legacy attached was assigned by Horace N. Woodward, by deed of assignment, bearing date on the 21st day of October 1826, has moved this court to set aside the report of the auditors, because if the court had authority in September 1826, to allow them farther time to make their report, yet it was not made within the time so allowed, nor until November term 1827. This motion has been argued by counsel on his part and for the plaintiffs, and now stands for our opinion.

Taylor *et al v.* Woodward.

In making and sustaining this motion, John De Camp appears in no other or more favorable light than the defendant in attachment. There is no legal efficacy in the assignment to weaken existing rights, or impair existing liens, or to protect the legacy when claimed by the assignee, from any charge to which it had been previously, in a lawful manner, subjected. The matters contained in the affidavits and exhibits laid before us, furnish very strong presumptive evidence, that De Camp, when he took the assignment, had actual knowledge of the pendency of the attachment. But we need not dwell on this point, for the very pendency of the suit on attachment, and it will be observed that the assignment was made between the terms of September and November 1826, is so far as respects the matter before us constructive notice, sufficient to disrobe him of all pretension to the character or immunity of a *bona fide* purchaser without notice, and to subject him to all the legal consequences of actual notice. *Pendente lite nihil innovetur.* There is no principle better established, says *Chancellor Kent, Murray* v. *Lylburn,* (2 *Jno. C. R.* 444,) nor one founded on more indispensable necessity, than that the purchaser of the subject matter in controversy, *pendente lite,* does not vary the rights of the parties to that suit, who are not to receive any prejudice from the alienation.

Further. In the term of November, 1826, a rule of this court was obtained on the part and in the name of the defendant, requiring the plaintiffs to shew cause why the proceedings of the sheriff under the attachment, and his return thereto, should not be set aside on the ground that the legacy was not attachable. The rule was argued by counsel at February term, and the decision of the court given at May term following. From this fact it follows, either that De Camp made use of the name of the defendant after he had ceased to have any interest in the matter, or that the defendant retained an interest notwithstanding the assignment on the face of it absolute, unqualified and for the whole legacy.

Inasmuch then as De Camp can avail himself of nothing to impugn the report, which might not be equally urged by the defendant, it seems unnecessary to examine or decide a question raised by the plaintiff's counsel, insisting that De Camp ought not to be at all heard in this matter.

The merits of the report or, in other words, the indebtedness of the defendant to the plaintiff in attachment, cannot at this time be made the subject of examination. The only legal mode which, for this end, can be adopted by the defendant, or any person standing in his place, is by putting in special bail and dissolving the attachment. And indeed, from the documents laid before us, it would seem as if the enquiry could not avail much to the defendant or De Camp if the question were open. By an instrument of writing signed by the plaintiffs and defendant, and under their seals, it appears that on the 15th September, 1826, they made a settlement of the disputes between them, and especially respecting a book account standing against the defendant, on a book left by his father, the decedent; and the defendant acknowledged that he was indebted to them $800, which he engaged to pay on the first day of the ensuing November. On the same day he executed another instrument of writing, also under seal, directed to Apollo Woodward, whereby he ordered him to pay out of the above mentioned legacy, to W. J. Emley and Samuel C. Taylor, two of the executors of Abner Woodward, deceased, the sum of $800, and specially requests him to accept the order; and accordingly, on the same day, Apollo Woodward did accept the order, by an acceptance in writing, endorsed. On the 20th of October, the defendant caused to be served, on Apollo Woodward, a written notice not to pay the order, because he alleges the executors had failed to comply with the agreement for a settlement, although the only stipulation on their part which it contains is, that when the money is paid they shall give him a receipt in full of all accounts, except a small note of hand. Of these matters there can be little doubt that De

Camp was fully apprised; the assignment, to him, bears date the day after the above mentioned notice. Both are in the same hand writing; and the person who served the latter is a subscribing witness to the former.

Some of the questions involved in the objection, now made to the report of the auditors, have been heretofore settled. The power of the court to refer back the report or to set it aside, if need be, to allow time to the auditors to make report beyond the third term from the issuing of the attachment, and the authority of the court to render judgment, after the third term has been distinctly recognized. In *Cory* v. *Lewis,* an attachment was returned to the term of December, 1819, of the Court of Common Pleas of the county of Morris. The defendant was called, and auditors appointed. At the ensuing March term, the court set aside the writ of attachment and all the proceedings thereon. A *certiorari* was brought by the plaintiff, and at May term, 1820, this court reversed the judgment of the Court of Common Pleas, and directed the attachment to be continued, and the further proceedings necessary thereon to be had here. 2 *South.* 846. In *Berry* v. *Callet,* a report of auditors on attachment was made to the Court of Common Pleas of the county of Bergen, in January term, 1822, whereby they found nothing due to certain of the applying creditors. At their instance a rule was taken to shew cause why the report should not be set aside, and the claims of the rejected creditors be admitted; and at the same term the plaintiff moved for judgment on the report, which the court denied. A writ of *mandamus,* to command the court to enter judgment, was applied for here. Upon the argument Chief Justice KIRKPATRICK said he could scarcely entertain a doubt of the right of the court to open the report of the auditors, and mentioned a case before the revolution, in which the court had stayed the proceedings in attachment, and ordered an issue to try the claim of a creditor. After some time for deliberation, the court held that the Common

Taylor *et al v.* Woodward.

Pleas had a right to refer the matter back to the auditors, and overruled the application for a *mandamus*. In this conclusion, I am fully satisfied, from a review of the subject, the court were right. It is essential to the ends of justice, and the due administration of the law, that the power of the court over the report, should be vindicated and maintained. The provision in the statute, for the entry of judgment, is designed to shew the earliest period at which it may be entered, but by no means to prevent it at a subsequent time, when the circumstances of the case, in the opinion of the court, may justify the delay.

The remaining ground of objection is, that the report was not made until after the expiration of the time mentioned in the rule of September, 1826. It is obvious this ground of objection has nothing, of what are called merits, to recommend it. It presents no consideration of injustice. It is matter of mere form. The defendant could not legally be heard before the auditors. The lapse of time, therefore, did him no injustice. It is recollected that on the argument, the counsel of De Camp said the defendant having seen the term of November pass without any report made, might justly suppose the plaintiffs had abandoned the attachment, and return to his residence in Ohio. But he did not wait until that term, for he made the assignment in October. Nor did he suppose the attachment abandoned; for in November term he moved to quash it, and his own motion was depending until the May term following. The *dies datus*, contained in the rule, is by no means a conditional delegation of power to the auditors, and is in legal contemplation nothing more than a continuance. The reference back to them is, in form as well as in fact, distinct from and independent of the direction as to time. The limitation of time is in no wise of the essence of the authority of the auditors; nor does its lapse, by any means, disrobe them of their character as auditors, or extinguish the power of the court over them and their report. The pendency of the

attachment does not thereby cease, nor the appointment of the auditors terminate. A formal entry of the extension of the time, if such entry on our minutes be requisite, may be made under our order now. Our acceptance of the report, and rendition of judgment upon it, will be a sufficient warrant to the clerk to enter such continuances as the regularity of the record may require.

The claim of Aaron Cole, although not exhibited to the auditors until after the matter had been referred back to them, was nevertheless in due season, and properly included in their report. All creditors are, according to the statute, entitled to be heard who apply to the court, or to the auditors before they make their report. The report here intended is clearly that which may be accepted by the court, and made the foundation of their judgment. The report which the court shall set aside, or refuse to accept or refer back to the auditors, is in effect no report; such a report cannot close the doors on creditors; they remain open until a legal, final report is made.

It is not unfit here to be recollected, that the legislature, unwilling to trust the statute respecting attachments to the ordinary principles of construction, which certainly would have ensured to so useful a remedy the most favorable regard, have expressly enacted, " that this act shall be construed in all courts of judicature, in the most liberal manner, for the detection of fraud, the advancement of justice, and the benefit of creditors."

The motion to set aside the report is overruled.